# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | |
|---|---|
| **M.D.,** *Plaintiff,* | Case No. |
| **v.** | **JURY TRIAL DEMANDED** |
| **VERIZON COMMUNICATIONS, INC.** 1095 Avenue of the Americas New York, NY 10036 | |
| and | |
| **VERIZON WIRELESS SERVICES, LLC** One Verizon Way Basking Ridge, NJ 07920 | |
| and | |
| **ROBERT MICHAEL GLAUNER** *Defendants.* | |

## COMPLAINT

COMES NOW the Plaintiff, M.D., by and through counsel, and for her Complaint alleges as follows:

## PARTIES AND JURISDICTION

1.  Plaintiff, M.D., is a citizen and resident of the State of North Carolina. M.D.'s initials are being used to protect her privacy because she is a victim of sexual harassment, stalking, and threats of serious bodily harm and death as will be detailed below.

2.  Defendant Verizon Communications, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of New York.

3.  Defendant Verizon Wireless Services, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in the State of New Jersey and with its member in the State of New Jersey.

4.  Verizon Communications, Inc. and Verizon Wireless Services, LLC will hereinafter be referred to collectively "the Verizon Defendants."

5.  Robert Michael Glauner, on information and belief, is a citizen of the State of New Mexico.

6.  Jurisdiction is proper pursuant to 28 U.S.C. § 1332 as the plaintiff is a citizen of a different state than all defendants, and the amount in controversy exceeds $75,000.00.

## COMMON FACTUAL ALLEGATIONS
### Communications Between M.D. and Glauner

7.  In approximately August 2023, M.D. and Robert Michael Glauner ("Glauner") met online via a website.

8.  M.D. provided Glauner with her cell phone number but did not give Glauner her real name, instead using the alias "Mia."

9.  M.D. and Glauner communicated for a brief period of time. M.D. soon grew uncomfortable with Glauner. She asked Glauner to stop contacting her and ended communications with him.

10. M.D. blocked Glauner on her personal cell phone number and the website.

11. Glauner disregarded M.D.'s communications cut-off. Glauner instead repeatedly and continually contacted M.D. against her wishes.  On information and belief, Glauner utilized means such as VOIP (voice over internet protocol) phone numbers that were unfamiliar to M.D. to circumvent the blocking of his phone number.

2

**M.D. Notifies Verizon That She is Being Harassed and Changes Her Phone Number**

12. Nonetheless, Glauner's attempts to contact M.D. continued to be harassing and incessant.

13. M.D. began suffering sexual harassment in the form of retaliation for rejecting unwanted sexual attention; unwanted sexual advances; and unwanted sexual comments.

14. M.D. contacted her local police department to ask what could be done, and she was advised to change her phone number.

15. On or around September 21, 2023, M.D. visited her local Verizon store and informed the Verizon Defendants, through their agents, employees, and/or representatives, that she wished to change her number because she was being harassed, and then did have her phone number changed in order to avoid Glauner contacting her through other phone numbers.

16. Verizon was on notice that M.D. had changed her number due to being harassed.

17. Glauner did not have access to M.D.'s new number. He was not able to contact her through her old number as it was no longer in service. In short, M.D. blocked all means he had to contact her.

**Verizon Recklessly Provides M.D.'s Confidential Information to Stalker Glauner**

18. Glauner remained disturbingly undeterred in his attempts to contact Glauner despite being blocked by her.

19. On or around September 2023, Glauner concocted a plan to obtain M.D.'s confidential cell phone records that included her full name, address, contacts, and incoming and outgoing text messages and calls.

20. Glauner is not and has never been a law enforcement officer, judicial officer, officer of the court, and/or in any way authorized to issue a search warrant and/or subpoena.

3

21. On September 26, 2023, Verizon's Security Assistance Team—Court Compliance Team (hereinafter "VSAT CCT") received an email from steven1966@proton.me to vsat.cct@one.verizon.com requesting the "cell phone data" pertaining to M.D.'s account along with "full name of this subscriber and the new phone number that has been assigned to her." See Criminal Complaint, attached hereto as Exhibit 1 ¶ 12. The email was, in fact, from Glauner.

22. The email address associated with the request is a Proton Mail account and is not an official government email address. Proton Mail is a private email service provider located in Switzerland and is encrypted to where Proton cannot see the contents of their users' emails.

23. The email sent by Glauner contained an attached fake search warrant. The email falsely stated that he was "Detective Steven Cooper of the Cary, NC police Department who is currently assigned to the Homicide Division" and that "The Phone Number [(XXX) XXX]-8578 is owned by a female person who was seen at the scene of the homicide." Exhibit 1 ¶ 12. Glauner's "search warrant" contains several typos and grammatical errors.

24. The events described by Glauner in the email to Verizon are completely fabricated.

25. There is no officer employed by the Cary Police Department in North Carolina by the name of Steven Cooper.

26. The document further stated that Glauner (posing as "Detective Steven Cooper") required the phone number of the "female suspect" because she allegedly had changed her phone number on September 22, 2023 and "we ask for all cell phone data to include. Call records both outgoing and incoming. Locations and text messages incoming and outgoing. We need these records going back 90 days to establish then involvement of the suspect and any co suspects who has been in contact with." Exhibit 1 ¶ 12.

27. Glauner "signed" the email as the fictitious "Detective Steven Cooper."

28. Glauner further falsely "signed" the "search warrant" as the "Gale Adams Honorable Judge" from Wake County, North Carolina. This was a falsity.

29. In reality, Judge Gale M. Adams is a Superior Court Judge in Cumberland County, North Carolina. On October 18, 2023, Judge Adams was shown the document, and indicated that the signature displayed was not hers and she did not sign it.

30. North Carolina search warrants must be executed on Form AOC-CR-119. Exhibit 1 ¶ 13.

31. A simple Google search will yield North Carolina's Form AOC-CR-119 required for search warrants, attached hereto as Exhibit 2.

32. The "search warrant" issued by Glauner to Verizon did not utilize form AOC-CR-119.

33. Later that day, Glauner contacted Verizon, again as the nonexistent "Officer Cooper," to inquire about the records, and falsely stated that M.D. was going "to flee to Puerto Rico" and requested that the delivery be rushed. Exhibit 1 ¶ 16.

34. The Verizon employee who spoke with Glauner informed him that M.D. had changed her phone number.

35. Glauner and the employee arranged for Glauner to resend the search warrant.

36. On September 26, 2023 at 3:15 P.M., Glauner then sent the fraudulent search warrant once again to [vsat.cct@one.verizon.com](mailto:vsat.cct@one.verizon.com) requesting "We need this information non [sic] [(XXX) XXX] 8578 and all info on subscribers new number and full name." Exhibit 1 ¶ 18.

37. Verizon made no inquiry or research into the validity of Glauner's request. Verizon did not call the Cary Police Department to verify "Detective Steven Cooper's" request.

38. No inquiry or research was made into the validity of Glauner's "search warrant" despite its facially and obviously absurd format containing numerous deficiencies and/or easily verifiable lies including but not limited to the following:

a.  Glauner's emails came from a personal email rather than an official governmental account in North Carolina;

b.  The search warrant was not in the proper format nor on the required proper form AOC-CR-119;

c.  The content of the "search warrant" referenced a crime with no date or other details;

d.  Detective Steven Cooper was a wholly fictitious and nonexistent "officer" of the Cary Police Department, discoverable with a call to the Cary Police Department;

e.  Judge Gale M. Adams did not preside over Wake County Superior Court, which has jurisdiction over Cary, North Carolina.

f.  The signatures on the "warrant" appear to be electronic scribbles.

39. On October 5, 2023, nine days after receiving the first request, Verizon provided Glauner with M.D.'s phone records.

40. Verizon's dissemination of M.D.'s confidential phone records also provided Glauner access for the first time to M.D.'s actual full name and address.

41. Verizon's dissemination of M.D.'s confidential phone records also provided Glauner access to M.D.'s phone logs and contacts including her family and friends.

42. Once he had received the phone records from Verizon, on October 9, 2023, Glauner once again called VSAT CCT to ask how to read the data provided because he did not know how to do so. An explanation was provided to Glauner by a Verizon employee.

43. Verizon also provided stalker Glauner with M.D.'s new phone number.

44. Emboldened by his receipt of M.D.'s confidential phone records on October 10, 2023, Glauner sent another email demanding M.D.'s "complete cell phone data" for her new phone number. Exhibit 1 ¶ 22.

45. The October 10, 2023 fraudulent search warrant requested "all incoming and outgoing calls, all text messages both incoming and outgoing, GPS coordinate for said number and all pictures being sent and received. IP address of said number to be collected. Complete cell sites [sic] identification numbers." Exhibit 1 ¶ 22.

46. The "search warrant" was still in the wrong format, did not utilize Form AOC-CR-119, and once again contained Cumberland County Judge Gale Adams's forged signature.

47. Glauner sent a follow-up email to Verizon on October 12, 2023 falsely stating that M.D. was wanted for homicide and was going to "flee the US jurisdiction to Puerto Rico." Exhibit 1 ¶ 22.

48. On October 13, 2023, Glauner sent two emails demanding M.D.'s phone records – this time from the Switzerland Proton Mail account Tim.K.1972@proton.me. Exhibit 1 ¶¶ 26-27.

49. On October 16, 2023, Glauner once again sent a fraudulent search warrant for Plaintiff's phone records to VSAT CCT from Gallagher.kelley@proton.me stating that he was "Kelle Gallagher employed by the White Oak police department." Exhibit 1 ¶ ¶31-32.

50. The October 16, 2023 "search warrant" once again lacked form AOC-CR-119 and contained other deficiencies including but not limited to the fact that the "White Oak Police Department" in North Carolina does not exist. Exhibit 1 ¶ ¶31-32.

51. On October 17, 2023 and October 18, 2023, Glauner followed up by email as "Detective Kelle Gallagher of the White Oak Police Department." Exhibit 1¶ ¶36-37.

52. On October 18, 2023, Verizon's VSAT CCT received a phone call from "Kelley Gallagher" of the "White Oak Police Department" requesting a "rush" on the search warrant due to the "suspect fleeing the country." He referred only to M.D. by name, not target number. Exhibit 1¶ 38.

53. The phone number utilized by Glauner to call VSAT CCT was actually a number assigned to a Wal-Mart Family Mobile account managed by Verizon Wireless, the subscriber of which lived in New Mexico.

**Verizon's Reckless Leak of M.D.'s Confidential Information Results in Stalker Glauner's Harassment and Threat to M.D.'s Life**

54. On or around October 10, 2023, M.D.'s mother began receiving phone calls from Glauner informing her that he was trying to contact M.D. Over the following week and a half, Glauner left numerous text messages and ten different voice messages threatening that he would "keep calling you, her friends, her job…I'm not going to stop until she messages me" and "things are not gonna get any better for [M.D.]" if she kept "avoiding" Glauner.

55. On October 15, 2023, Glauner fraudulently called the Raleigh Wake Emergency Communications Center requesting a welfare check on M.D. at her home address that had been provided to Glauner by Verizon. Raleigh Police responded to the call and determined it was false.

56. Sometimes in October 2023, Verizon informed M.D. that it had provided her records to Glauner.

57. Verizon told M.D. that "whoever this is also victimized us."

58. On October 16, 2023, Glauner texted M.D.'s father with a photo of M.D. stating "Do you know this girl?"

8

59. On October 19, 2023, M.D.'s coworker received a call from a Glauner asking for M.D. at their place of employment.

60. When Glauner was told M.D. was not at the store, he became upset, accused the coworker of lying and called the coworker a "prick" before terminating the call.

61. Glauner continued to call M.D.'s place of work for several days, and the frequency of the calls interrupted the employees and the business. Glauner called another coworker a "lying bitch."

62. Glauner continually sent harassing text messages to friends and family of M.D. including threats to:

    a. "come and climb into her [M.D.] bedroom window and then tie her up and rape her…I know where she lives since she gave me her address. And she wants me to take her from there and bring her back to my house. She says that I will own her then;"

    b. "…When she feels completely safe and don't have to keep looking over her shoulder that's when bad things can happen."

    c. "The only thing you can beat is that b**ch I call my baby girl."

63. On October 26, 2023, to stop the harassment of her friends, family, and employer, Plaintiff obtained a Tracphone number and at the direction of law enforcement provided that number to Glauner who began to contact M.D. on that number.

64. Between approximately October 30, 2023 to November 6, 2023, law enforcement connected Glauner to the emails and phone calls made to VSAT/CCT and discovered that he was separately wanted by the San Diego Sheriff's Office on a charge of stalking.

65. On November 5, 2023, Glauner told M.D. that he was heading to Cary, North Carolina and sent her the following text message:

> "I really can't F***** believe you did this to me again [referring to M.D.] you f**** me with my gas the money I spent on gas to drive all the way to f****** Little Rock Arkansas and then tell me to turn around you f***** c*** that's right I'm venting right now because I don't know what else to do except maybe crash my f***** car into a tree and just f***** end it because of you or maybe I should just turn around head to your house and stop at a f***** Walmart or somewhere or I don't know Dick's sporting goods what else though the big five and pick me up a f**** rifle and come to your house how's that sound f******* it if I can't have either nobody can how does that sound [referring to Plaintiff] are you getting scared now yeah I think that's what I'm going to do I'm just going to turn around stop at a big five and give me a f******* rifle and some ammunition and if I can't have you no one can you want to treat me like this well f*** you."

66. M.D., fearing for her life and general safety, relayed the information to law enforcement and worked with them regarding Glauner's whereabouts as Glauner made his way from New Mexico to North Carolina.

67. M.D. and her family had left her home out of fear for her life. Law enforcement set up surveillance of her property.

68. On November 6, 2023, Glauner, who had discovered M.D.'s address from the records provided to him by Verizon, arrived in North Carolina. He parked approximately one block from her home and began to make his way to M.D.'s house, hiding in a neighbor's yard in a darkened area.

69. At that time, the Raleigh Police Department arrested Glauner.

70. A search incident to arrest revealed that Glauner had a razor blade knife on his person, and the car he was driving contained two new bundles of rope, a glass meth pipe and eight grams of methamphetamine.

71. A federal grand jury in the Eastern District of North Carolina indicted Glauner on January 19, 2024 on eight counts of violation of federal law including stalking and feloniously traveling "with the intent to kill, injure, and harass [M.D.] and in the course of and as a result of such travel placed [M.D.] in reasonable fear of the death of, and serious bodily injury to, [M.D.] and caused substantial emotional distress to [M.D.]. *See* Indictment, attached hereto as Exhibit 3 at 5.

## COUNT ONE: VIOLATION OF THE STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701, et seq. – VERIZON DEFENDANTS

72. Plaintiff M.D. re-alleges and re-incorporates the allegations in paragraphs 1-71.

73. At all times relevant, the Verizon Defendants were entities providing an electronic communication service to the public pursuant to the Stored Communications Act, 18 U.S.C. § 2702.

74. As entities providing electronic communication service to the public, the Verizon Defendants were prohibited by law under the Stored Communications Act from knowingly divulging to any person or entity the contents of a communication in storage and/or knowingly divulging a record or other information pertaining to a subscriber or customer without consent or without a valid court order, warrant, or subpoena.

75. At all times relevant, the Verizon Defendants, through their employees, agents, and/or representatives, knowingly gave to Glauner, at a minimum, her confidential phone records containing M.D.'s legal name and address; her phone logs and contacts including her family and friends; and her new phone number.

76. At all times relevant, the Verizon Defendants, through their employees, agents, and/or representatives, were aware of what information was being given to Glauner, including, at a

minimum, her confidential phone records containing M.D.'s legal name and address; her phone logs and contacts including her family and friends; and her new phone number.

77. In other words, the Verizon Defendants did not experience a data leak: they knew they were divulging M.D.'s information, and they knew what was divulged. The Verizon Defendants gave Glauner exactly what he asked for.

78. No good faith basis existed to give Glauner M.D.'s records.

79. The Verizon Defendants violated the Stored Communications Act.

80. As a direct and proximate cause of the Verizon Defendants' violation of the Stored Communications Act, Plaintiff M.D. suffered actual damages including but not limited to sexual harassment, death threats, severe emotional distress, and anguish for which she demands relief.

81. As a direct and proximate result of Verizon Defendants' unconscionable and knowing violation of the Stored Communications Act, punitive damages should be awarded against the Verizon Defendants pursuant to 18 U.S.C. § 2707.

## COUNT TWO: VIOLATION OF THE STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701, et seq. – GLAUNER

82. Plaintiff M.D. re-alleges and re-incorporates the allegations in paragraphs 1-81.

83. Defendant Glauner worked in concert with the Verizon Defendants to unlawfully and fraudulently obtain, without authorization and in violation of the Stored Communications Act, M.D.'s Verizon records including her confidential phone records containing M.D.'s legal name and address; her phone logs and contacts including her family and friends; and her new phone number.

84. As a direct and proximate cause of Defendant Glauner's violation of the Stored Communications Act, Plaintiff M.D. suffered actual damages including but not limited to sexual harassment, death threats, severe emotional distress, and anguish for which she demands relief.

85. As a direct and proximate result of Defendant Glauner's unconscionable and knowing violation of the Stored Communications Act, punitive damages should be awarded against Defendant Glauner pursuant to 18 U.S.C. § 2707.

## COUNT THREE: INTENTIONAL/RECKLESS INFLICTION OF EMOTIONAL DISTRESS—ALL VERIZON DEFENDANTS

86. Plaintiff M.D. re-alleges and re-incorporates the allegations in paragraphs 1-85.

87. At all times relevant, the Verizon Defendants owed a duty to Plaintiff M.D. to protect the confidentiality of proprietary information of and relating to customers.

88. At all times relevant, the Verizon Defendants were aware that Plaintiff M.D. had specifically changed her phone number in an attempt to end the sexual harassment from Defendant Glauner.

89. At all times relevant, the Verizon Defendants were aware that customers suffering from sexual violence require their mobile lines to be transferred or changed.

90. The Verizon Defendants' release of M.D.'s confidential records to a request breached its duty by knowingly releasing M.D.'s records to a "search warrant" that was plainly fraudulent, without any further investigation or confirmation of the request, including but not limited to the following facts:

    a. Glauner's emails came from a personal email rather than an official North Carolina governmental account;

    b. The search warrant was not in the proper format nor on the required proper form;

    c. The content of the "search warrant" referenced a crime with no date or other identifying details;

    d. Detective Steven Cooper was a wholly fictitious "officer" of the Cary Police Department;

e.  Judge Gale M. Adams did not preside over Wake County Superior Court which has jurisdiction over Cary, North Carolina;

f.  Verizon provided records to Glauner after M.D. had notified Verizon that she was changing her phone number due to being sexually harassed; and

g.  In such other and further ways as may be shown through discovery.

91. The Verizon Defendants' conduct in releasing M.D.'s confidential records was extreme and outrageous. In the face of well-known information about the fact that dangerous individuals utilize their customers' data to put their customers in harm's way, particularly in situations of sexual violence, Defendant Verizon released confidential records which allowed Glauner to continue to contact and stalk Plaintiff, her co-workers, her friends and her family. This conduct by Verizon exceeds all possible bounds of decency and is utterly intolerable in a civilized community.

92. The Verizon Defendants' conduct was recklessly indifferent to the likelihood that it would cause severe emotional distress to Plaintiff M.D.

93. As a direct and proximate result of the Verizon Defendants' conduct, Glauner was given unfettered access to M.D.'s life that he would not have had but for Verizon's disclosure, including:

a.  Her full name and address;

b.  The contact information for friends, family, and coworkers, including the frequency of M.D.'s contacts with the aforementioned friends, family, and coworkers; and

c.  M.D.'s new phone number.

14

94. As a direct and proximate result of the Verizon Defendants' conduct, Glauner was empowered to terrorize, sexually harass and stalk M.D., and her family, friends, and coworkers, and was empowered to threaten her with rape and even death..

95. As a direct and proximate result of the Verizon Defendants' conduct, Glauner obtained M.D.'s home address and arrived at her home with a knife, rope, and with the intent to kill her.

96. As a direct and proximate result of the Verizon Defendants' reckless conduct in releasing her records, Plaintiff M.D. has suffered severe and disabling emotional distress. Plaintiff has suffered sexual harassment, fear for her life, and the safety of her family and friends, and continues to live in fear for her life and in fear of both Glauner, who will someday be released, and other dangerous and predatory individuals who could be able to access her confidential information in a similar manner in the future.

## COUNT FOUR: INTENTIONAL/RECKLESS INFLICTION OF EMOTIONAL DISTRESS—GLAUNER

97. Plaintiff M.D. re-alleges and re-incorporates the allegations in paragraphs 1-96.

98. At all times relevant, Defendant Glauner engaged in extreme and outrageous conduct including but not limited to

    a. Impersonating a police officer;

    b. Fraudulently requesting M.D.'s personal phone records from Verizon;

    c. Terrorizing, sexually harassing, and threatening M.D. with rape and death;

    d. Harassing and stalking M.D., and her family, friends, and coworkers; and

    e. In such other and further ways as may be shown through discovery.

99. Defendant Glauner intended and/or was recklessly indifferent to the likelihood that he would cause M.D. severe emotional distress.

100.     As a direct and proximate result of Defendant Glauner's conduct, Plaintiff M.D. has suffered severe disabling emotional distress. Plaintiff has suffered sexual harassment, fear for her life, and the safety of her family and friends, and continues to live in fear for her life and of dangerous individuals being able to access her confidential information again.

## COUNT FIVE: NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS—ALL VERIZON DEFENDANTS

101.     Plaintiff re-alleges and re-incorporates the allegations in paragraphs 1-100.

102.     At all times relevant, the Verizon Defendants owed a duty to Plaintiff M.D. to protect the confidentiality of proprietary information of and relating to customers.

103.     At all times relevant, the Verizon Defendants were aware that Plaintiff M.D. had specifically changed her phone number in an attempt to end sexual harassment by Defendant Glauner.

104.     At all times relevant, the Verizon Defendants were aware that customers suffering from sexual violence require their mobile lines to be transferred or changed.

105.     The Verizon Defendants breached their duties to M.D. through the release of M.D.'s records in response to a "search warrant" that was plainly fraudulent, without any further investigation or confirmation of the request, including but not limited to the following ways:

   a. Glauner's emails came from a personal email rather than an official North Carolina governmental account;

   b. The search warrant was not in the proper format nor on the required proper form;

   c. The content of the "search warrant" referenced a crime with no date or other identifying details;

d.  Detective Steven Cooper was a wholly fictitious "officer" of the Cary Police Department;

e.  Judge Gale M. Adams did not preside over Wake County Superior Court which has jurisdiction over Cary, North Carolina;

f.  Verizon provided records to Glauner after M.D. had notified Verizon that she was changing her phone number due to being sexually harassed;

g.  Verizon was negligent in that it had a subpoena compliance program that was woefully inadequate;

h.  Verizon was negligent in that it failed to manage and/or failed to train and/or failed to monitor its subpoena compliance team; and

i.  In such other and further ways as may be shown through discovery.

106.  Verizon's knowing release of Plaintiff's confidential records in response to a request which was so clearly fraudulent, without any further investigation or confirmation of the request, was, <u>at the very least, negligent.</u>

107.  It is reasonably foreseeable that a fraudulent search warrant to obtain a customer's private information would harm its customers, and that dangerous individuals utilizing their customers' data would put their customers in harm's way, particularly where a customer in the same week had changed her phone number as a result of harassment specifically reported to Verizon.

108.  As a direct and proximate result of the Verizon Defendants' conduct, Glauner was empowered to terrorize, sexually harass, threaten rape and death, and stalk M.D., and her family, friends, and coworkers – and to threaten M.D. with rape and death.

109. As a direct and proximate result of the Verizon Defendants' conduct, Glauner obtained M.D.'s home address and arrived at her home with a knife, rope, and the intent to kill her.

110. As a direct and proximate result of the Verizon Defendants' conduct in releasing her records, Plaintiff M.D. has suffered severe disabling emotional distress for which she demands relief. Plaintiff M.D.'s severe disabling emotional distress includes but is not limited to post traumatic stress disorder. Plaintiff has suffered sexual harassment, fear for her life, and the safety of her family and friends, has sought counseling, and continues to live a life dominated by fear.

111. The Verizon Defendants and Defendant Glauner are jointly and severally liable to damages to M.D. But for Verizon's negligence, Defendant Glauner would not have had the means to harass and stalk M.D.

## COUNT SIX: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS—GLAUNER

112. Plaintiff re-alleges and re-incorporates the allegations in paragraphs 1-111.

113. At all times relevant, Defendant Glauner was under a duty to exercise ordinary care to protect others from harm around him.

114. At all times relevant, Defendant Glauner breached this duty by:

a. Impersonating a police officer;

b. Fraudulently requesting M.D.'s personal phone records from Verizon;

c. Terrorizing, sexually harassing, and threatening M.D. with rape and death;

d. Harassing and stalking M.D., and her family, friends, and coworkers; and

e. In such other and further ways as will be shown in discovery.

115. As a direct and proximate result of the breach of ordinary care in Defendant Glauner's conduct, Plaintiff M.D. has suffered severe disabling emotional distress including but not limited to post traumatic stress disorder, for which she demands relief. Plaintiff has suffered from sexual harassment, fear for her life, and the safety of her family and friends, and continues to live in fear, has sought counseling, and continues to live a life dominated by fear.

116. The Verizon Defendants and Defendant Glauner are jointly and severally liable for damages to M.D. But for Verizon's negligence, Defendant Glauner would not have had the means to harass and stalk M.D.

## COUNT SEVEN: ASSAULT OF M.D. BY GLAUNER

117. Plaintiff M.D. re-alleges and re-incorporates the allegations in paragraphs 1-116.

118. Defendant Glauner, at all times relevant, threatened M.D. with imminent bodily harm, including but not limited to his stalking of M.D, and his threats of rape and death as he traveled across the country with intent to harm M.D.

119. Defendant Glauner, at all times relevant, caused M.D. to have reasonable apprehension that harmful and offensive contact with his person was imminent by threatening her with rape and death and arriving in North Carolina at M.D.'s house with a knife, two bundles of rope and the intent to kill her.

## COUNT EIGHT:  PUNITIVE DAMAGES – ALL DEFENDANTS

120. Plaintiff re-alleges and re-incorporates the allegations in paragraphs 1-119.

121. The Verizon Defendants' conduct in recklessly releasing M.D.'s records in response to a "search warrant" that was plainly fraudulent was outrageous conduct, grossly and willfully wrong, in violation of the law, and represented a reckless and wanton disregard of Plaintiff M.D.'s rights, for which punitive damages must be awarded.

122.     Punitive damages must be awarded to prevent the Verizon Defendants from again disclosing in the future the private and confidential information of their customers because, as exemplified by the instant case of M.D., so doing puts customers at severe risk of serious bodily harm, stalking, sexual harassment and assault, injury, rape, and death.

123.     Punitive damages must be awarded to prevent Glauner from the extreme and outrageous conduct displayed by Glauner in stalking, sexually harassing, terrorizing, and threatening M.D. with rape, injury, and death.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays this Court for the following relief:

1. For compensatory damages, and all pre and post judgment interest taxable by law exceeding $75,000.00, jointly and severally;

2. For all punitive damages allowed by law and to be determined by a jury;

3. For all attorneys' fees allowable by 18 U.S.C. § 2707;

4. That the cost of this action be taxed against the Defendants;

5. For such other and further relief to which Plaintiff may be entitled and which this Court deems just and proper; and

6. A trial by jury.

Respectfully submitted this the 19th day of August, 2024,

*/s/ Amanda C. Dure*
Amanda C. Dure
N.C. Bar No. 48710
PANGIA LAW GROUP
1717 N Street NW, Suite 400
Washington, DC 20036

*/s/ James T. Crouse*
James T. Crouse, Esq.
N.C. Bar No. 22643

CROUSE LAW OFFICES
PO Box 33460
Raleigh, North Carolina 27636
T: (919) 881-8441
F: (919) 881-8435

*Counsel for Plaintiff*