UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| M.D., <br><br> *Plaintiff*, <br><br> v. <br><br> VERIZON COMMUNICATIONS INC., <br> VERIZON WIRELESS SERVICES, LLC, <br> and ROBERT MICHAEL GLAUNER <br><br> *Defendants*. | Case No: 5:24-cv-00474-BO <br><br> MEMORANDUM IN SUPPORT OF PLAINTIFF M.D.'S MOTION TO PROCEED BY PSEUDONYM |

COMES NOW the Plaintiff, M.D., by and through counsel, and hereby submits her memorandum in support of her Motion to Proceed by Pseudonym pursuant to this Court's Notice to Counsel of November 20, 2024.[1]

## SUMMARY OF ARGUMENT

This cause of action arises from the release of M.D.'s personal information, including her name, address, and private and confidential phone records, by defendants Verizon Communications Inc. and Verizon Wireless Services, LLC (hereinafter collectively "Verizon") to her alleged stalker, Robert Michael Glauner. Verizon produced these records to Glauner in response to an obviously fraudulent search warrant produced by Glauner – a man who is not and has never been in law enforcement or any sort of officer of the court.

---

[1] Candidly, as the Notice to Counsel did not contain a deadline, counsel for Plaintiff M.D. was awaiting the Answer of Defendant Glauner (due on December 9, 2024) and as-then scheduled criminal arraignment of Defendant Glauner of December 12, 2024 to file the Motion to Proceed Under Pseudonym as both set ripe this Court's adjudication of the Motion to Proceed Under Pseudonym. See *USA v. Glauner,* 5:24-cr-25 (E.D.N.C.) (The arraignment has since been rescheduled to January 14, 2025 with representations of reaching a potential resolution on said date). See also *infra* at 13-14 (noting that the Fourth Circuit's factors in determining whether a pseudonym is proper include whether liability is established). Counsel, had, nonetheless, always intended to file such motion well-prior to the full briefings on the motion to compel arbitration, or by whatever earlier deadline was imposed by this Court.

Following the release of her phone records by Verizon, Glauner then used these records to stalk, sexually harass, and menace M.D. Glauner is presently detained on federal criminal charges for his actions, where M.D. is referred to by the pseudonym, M.G.D., for her safety. See ECF Doc. 1-1, Criminal Complaint, ECF Doc. 1-3, Criminal Indictment.

Plaintiff M.D. requests that this Court grant her Motion because she meets the factors set forth in *James v. Jacobson,* 6 F.3d 233 (4th Cir. 2014) to proceed under a pseudonym, including:

**(1) Identification poses a risk of retaliatory physical and mental harm not only to the requesting party, but to innocent nonparties.**

M.D. was not the only victim of Verizon and Glauner's actions. The release of her information by Verizon included the phone numbers of M.D.'s friends, family, and coworkers who were also harassed by Glauner, all of whom are not parties to this action. Moreover, M.D. suffers from severe post-traumatic stress disorder and constant fear of reprisals and retaliation.

**(2) This litigation deals with highly sensitive, personal, and private matters.**

The allegations underlying this case deal with stalking, sexual harassment, threats of death, and leaks of personal and private information including phone numbers of M.D. and her friends, family, and coworkers. Cases involving such matters are routinely allowed to proceed by pseudonym.

**(3) There is no prejudice or unfairness to the opposing party by requesting that Plaintiff proceed by pseudonym.**

There is agreement as to the basic facts of this case by the parties: that M.D.'s information was released, by Verizon, to Glauner. Verizon did not contest these basic facts in its Motion to Compel Arbitration (ECF Doc. 16 at 11-12). Verizon knows who M.D. is. There simply is no prejudice to anyone by proceeding via pseudonym.

Defendant Glauner, on the other hand, has not contested the allegations in the present civil Complaint, and the time to respond to the Complaint just recently expired. Moreover, Glauner is set to be arraigned on January 14, 2025, where his criminal defense counsel has represented a potential agreement and resolution to the criminal case is forthcoming.

Accordingly, Plaintiff M.D. respectfully requests that this Court GRANT her Motion to Proceed by Pseudonym.

I. **FACTUAL BACKGROUND**

A. **Communications Between M.D. and Glauner.**

In approximately August 2023, M.D. and Glauner met on an adult online dating site. See Complaint, ECF Doc. 1 ¶ 7; Complaint Exhibit 1, ECF Doc. 1-1 ¶ 9. M.D. gave Glauner her cell phone number, but not her real name, instead using the alias, "Mia" to be safe. *Id.* ¶ 8. They talked for a brief period of time, but M.D. quickly grew uncomfortable with Glauner. *Id.* ¶ 9. She asked Glauner to stop contacting her. *Id.* He did not. *Id.*

M.D. blocked Glauner on her personal cell phone, as well as the website. *Id.* ¶ 10. This did not stop him. He began to try to contact her through other means, including utilizing phone numbers unfamiliar to her so that she could not block him. *Id.* ¶ 11.

B. **M.D. Notifies Verizon That She is Being Sexually Harassed and Changes Her Phone Number.**

Glauner's continued attempts to contact M.D. quickly soured: the content of the messages became sexually harassing, contained unwanted sexual advances, and unwanted sexual comments. *Id.* ¶¶ 12-13. M.D. contacted her local police to ask what she could do, and they advised her to change her phone number. *Id.* ¶ 14. On or around September 21, 2023, M.D. went to her local Verizon store and told Verizon that she wanted to change her number because she was being harassed. *Id.* ¶ 15. Verizon, now on notice that M.D. was being harassed, changed her number. *Id.* ¶ 16. For a moment, M.D. felt peace: Glauner did not have her new number, and her old number was no longer in service. *Id.* ¶ 17. M.D. had blocked all means Glauner had to contact her. *Id.*

C. **Verizon Gives M.D.'s Confidential Information to Stalker Glauner.**

M.D.s peace was unfortunately short-lived. Unbeknownst to her, Glauner remained undeterred in his attempts to contact her. *Id.* ¶ 18. It is quite important to note that Glauner is not,

and has never been, a law enforcement officer, judge, attorney, any officer of the court, or in any way authorized to issue a search warrant and/or subpoena. *Id.* ¶ 20. Instead, Glauner was a civilian living in New Mexico with an outstanding warrant for stalking from California. See Complaint Exhibit 1, ECF Doc. 1-1 ¶ 59, Criminal Complaint in *United States of America v. Robert Michael Glauner,* Case No. 5:23-MJ-2438-JG (E.D.N.C). At this time, Glauner did not know M.D.'s actual full name or her address either. ECF Doc. 1 ¶ 40.

On September 26, 2023, Glauner sent an email to Verizon's Security Assistance Team—Court Compliance Team (hereinafter "VSAT CCT") from steven1966@proton.me to vsat.cct@one.verizon.com requesting the "cell phone data" pertaining to M.D.'s account along with the "full name of this subscriber and the new phone number that has been assigned to her." *Id.* ¶ 21. He also asked for all incoming and outgoing call records, text messages, and locations going back 90 days "to establish then involvement of the suspect and any co suspects who has [sic] been in contact." *Id.* ¶ 26.

The request should have raised suspicions with Verizon immediately as there was not an iota of plausibility within the request. The email sent by Glauner contained a fake search warrant, with each and every statement in the "search warrant" containing lies. *Id.* ¶ 23. These include, but are not limited to the following:

- Proton Mail is not an official government server, but a private, encrypted email service provider located in Switzerland. *Id.* ¶ 22.
- Glauner claimed to be "Detective Steven Cooper of the Cary, NC police Department who is currently assigned to the Homicide Division." *Id.* ¶ 23. Detective Steven Cooper did not exist – there is no officer employed by the Cary Police Department in North Carolina by the name of Steven Cooper. *Id.* ¶ 25.

- The event purporting to be the basis for the "search warrant" was completely made up. Glauner claimed that "The Phone Number [(XXX) – XXX] -8578 is owned by a female person who was seen at the scene of a homicide" and that he required the phone number of the "female suspect" because she had allegedly changed her phone number on September 22, 2023. *Id.* ¶¶ 23, 26. There was no other specificity as to the "crime" in Glauner's search warrant—no date, no location, no name, no details. *Id.* ¶ 38.
- The "search warrant" was riddled with typos and grammatical errors. *Id.* ¶ 23.
- It was not executed on North Carolina's Form AOC-CR-119. *Id.* ¶ 23. ECF Doc. 1-1 ¶ 33.
- There were multiple forgeries on the "search warrant." In addition to the signature of the made-up Detective Steven Cooper, Glauner forged the signature of Judge Gale Adams, a Superior Court Judge from Cumberland County, NC (Glauner erroneously identified Judge Adams as presiding over Wake County). *Id.* ¶¶ 23, 38. The signatures on the so-called "warrant" appeared to be electronic scribbles. *Id.* ¶ 38.

These errors were only the tip of the erratic iceberg, as more fully detailed in Plaintiff's Complaint. No call to the Cary Police Department to verify Detective Steven Cooper. *Id.* ¶ 37. No call to Wake or Cumberland County to verify that Judge Adams had in fact issued a warrant. Instead, Verizon actively assisted Glauner by confirming to him that M.D. had changed her phone number. *Id.* ¶ 34.

On October 5, 2023, nine days after receiving the first request, Verizon provided Glauner with M.D.'s phone records. *Id.* ¶ 39. For the first time, Glauner had access to, at a minimum, M.D.'s full government name, address, and contacts including family, friends, and coworkers. *Id.* ¶¶ 40-41.

Remarkably, Glauner did not understand how to read the data provided to him by Verizon. Four days later, on October 9, 2023, not only did Verizon provide him with an explanation of how to read the data, but also with M.D.'s new phone number. *Id.* ¶¶ 42-43. Verizon also did not tell M.D. that it had given her information to Glauner until after the harassment campaign had already started, simply stating that "whoever this is also victimized us." *Id.* ¶¶ 56-57.

### D. The Floodgates of Harassment Open.

As soon as Glauner received direction from Verizon on how to read the data given to him, his harassment campaign went into full gear again. On or around October 10, 2023, M.D.'s mother received no fewer than ten (10) different voice messages and numerous additional text messages threatening that he would keep "keep calling you, her friends, her job…I'm not going to stop until she messages me" and "things are not gonna get any better for [M.D.]" if she kept "avoiding" Glauner. *Id.* ¶ 54. On October 15, 2023, Glauner fraudulently called the Raleigh Wake Emergency Communications Center requesting a welfare check on M.D. *Id.* ¶ 55. Raleigh Police responded to the call and determined that it was false. On October 16, 2023, Glauner texted M.D.'s father with a photo of M.D. *Id.* ¶ 58. Over the ensuing days and weeks, Glauner began to call M.D.'s place of work, calling her coworkers "prick" and "lying bitch." *Id.* ¶¶ 60-61.

Most concerningly, Glauner's harassing calls and texts contained sexually explicit and sexually harassing threats. He threated to release M.D.'s nude images to family members. See ECF Doc. 1-1 ¶ 57. He stated that he would:

- "[C]ome and climb into her [M.D.] bedroom window and then tie her up and rape her…I know where she lives since she gave me her address. And she wants me to take her from here and bring her back to my house. She says that I will own her then."
- "…When she feels completely safe and don't have to keep looking over her shoulder that's when bad things happen."
- "The only thing you can beat is that b**ch I call my baby girl."
- "…I should just turn around head to your house and stop at a f***** Walmart or somewhere or I don't know Dick's sporting goods…and pick me up a f***** rifle and come to your house how's that sound f*** it if I can't have either nobody can now yeah I think that's what I'm going to do …"

*Id.* ¶¶ 62, 65.

On October 26, 2023, to stop the harassment of her friends, family, and employer, Plaintiff obtained a Tracphone number and at the direction of law enforcement provided that number to Glauner who began to contact M.D. on that number. *Id.* ¶ 63. Between October 30, 2023 to November 6, 2023, law enforcement connected Glauner to the emails and phone calls made to VSAT, also discovering he was wanted by the San Diego Sheriff's Office on a separate charge of stalking. *Id.* ¶ 64.

On November 5, 2023, Glauner told M.D. he was heading to Cary, North Carolina from New Mexico, threatening her along the way. *Id.* ¶¶ 65-66. M.D. relayed this information to law enforcement and worked with them regarding Glauner's whereabouts as he made his way across the country, closing in on her. *Id.* ¶ 66.

On November 6, 2023, Glauner, who had discovered M.D.'s address from the records provided to him by Verizon, arrived in North Carolina. He parked approximately one block from

her home and began to make his way to M.D.'s house, hiding in a neighbor's yard in a darkened area. *Id.* ¶ 68. At that time, Raleigh Police arrested Glauner. *Id.* ¶ 69. The search incident to arrest revealed that Glauner had a knife on him, and in his car two new bundles of rope, a glass meth pipe, and eight grams of methamphetamine. *Id.* ¶ 70.

### E. Stalker Glauner is Criminally Charged.

On November 6, 2023, probable cause was presented to a Wake County Magistrate Judge requesting the issuance of an arrest warrant charging Glauner with Extortion for threatening to release M.D.'s nude images to her family members, Stalking, Cyberstalking, and Communication of Threats. ECF Doc. 1-1 ¶ 57. The warrant was issued authorizing the arrest of Glauner.

On January 19, 2024, a federal grand jury in the Eastern District of North Carolina indicted Glauner on eight counts of violation of federal law, including stalking and feloniously traveling "with the intent to kill, injure, and harass [M.D.] and in the course of and as a result of such travel plac[ing] [M.D.] in reasonable fear of the death of, and serious bodily injury to, [M.D.] and caus[ing] substantial emotional distress to [M.D.]. ECF Doc. 1 ¶ 71. See also Complaint, Exhibit 3, Criminal Indictment in *United States v. Glauner,* 5:24-CR-25-FL-RN (E.D.N.C.), ECF Doc. 1-3.

On November 18, 2024, Glauner was served with the Complaint in this civil matter. To present date (twenty-three days later), the undersigned has not received an Answer contesting the allegations in the Complaint.

On December 5, 2024, Glauner's counsel for his criminal case represented to the Court in a Motion to Continue Arraignment as to Robert Michael Glauner that "Undersigned [Glauner's counsel] and Assistant United States Attorney Lori Warlick (AUSA Warlick) are continuing to

negotiate a potential resolution in this matter. The parties are close to resolving negotiations but require additional time to finalize an agreement due to leave and scheduling conflicts." *USA v. Glauner,* Case No. 5:24-cr-25, ECF Doc. 40 ¶ 3, attached hereto as Exhibit 1. The Court granted the motion and Glauner's arraignment is now presently set for January 14, 2025.

II. **LAW AND ARGUMENT**

The Fourth Circuit identifies "five non-exhaustive factors for district courts to consider when deciding motions to proceed by pseudonym." *Doe v. Doe,* 85 F. 4th 206, 211 (4th Cir. 2023). These factors, first set in *James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 2014), are set out as follows:

(1) Whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature;

(2) Whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent nonparties;

(3) The ages of the persons whose privacy interests are sought to be protected;

(4) Whether the action is against a governmental or private party; and

(5) Relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

6 F.3d at 238.

The decision to "allow a litigant to proceed anonymously is committed in the first instance to trial court discretion. But discretion is not whim, and a motion to a court's discretion

is a motion, not to its inclination, but to its judgment, and its judgment is to be guided by sound legal principles." *Doe v. Sidar,* 93 F. 4th 241, 247 (4th Cir. 2024). Thus, the "decision whether to permit use of a pseudonym must be based on the circumstances of particular cases." *Id.* The decision is reviewed on appeal on an abuse of discretion standard. *James v. Jacobson,* 6 F.3d 233 at 239.

1. **This litigation deals with highly sensitive, personal, and private matters.**

Courts have recognized "a plaintiff's interest in preserving privacy where the allegations concern sexual assault." *Doe v. Doe*, 85 F.4th 206, 212 (4th Cir. 2023). In fact, this Court has noted that "the practice of closing courtrooms to members of the public while a victim of sex crimes testifies"—a step far more drastic than the "limited form of closure" represented by allowing a sexual assault victim to use a pseudonym—"has not been uncommon." *Bell v. Jarvis*, 236 F.3d 149, 167 (4th Cir. 2000) (first and third quote); *James*, 6 F.3d at 238 (second quote). For that reason, "[f]ictitious names are" often "allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). "The importance of these privacy interests is not limited to criminal cases." *Doe v. Sidar,* 93 F.4th at 248.

Crimes of stalking, sexual harassment, and privacy intrusion are no different. M.D. is an extremely vulnerable victim. For example, the North Carolina General Assembly explicitly states in the legislative intent subsection of its stalking statute, N.C. Gen. Stat. § 14-277.3A, that it "recognizes the dangerous nature of stalking as well as the connections between stalking and domestic violence and stalking and sexual assault." The crime "causes a long-lasting impact on

the victim's quality of life and creates risk to the security and safety of the victim and others, even in the absence of express threats of physical harm." *Id.*

Plaintiff M.D. attaches a report on stalking, the harms of stalking, and the connection to this case produced by Dr. Patrick Brady, a professor in Criminal Justice and stalking hereto as Exhibit 2. The report details not only the intimate, highly sensitive, highly dangerous nature of stalking crimes, but provide a more detailed overview of the sexually harassing conduct, stalking, and threats that she endured over the month following Verizon's release of her information. See Exhibit 2 at 9-13. M.D. will have to recount all of these traumatic details in order to seek justice. Thus, the limited form of disclosure that she seeks – to proceed with a pseudonym – should be granted by this Court.

   **2. Identification poses a risk of retaliatory physical and mental harm not only to the requesting party, but to innocent nonparties.**

When adjudicating a motion to proceed anonymously, "it is necessary to protect innocent third parties, as well protect them from annoyance, embarrassment, or unfairness from deprivation of privacy." *Strike 3 Holdings, LLC v. Address,* Case No. 23-cv-54494, 2023 U.S. Dist. LEXIS 230964, *20 (N.D. Cal. Dec. 27, 2023) (holding that anonymity was necessary to preserve privacy and protect person to be identified by AT & T from annoyance and embarrassment because of highly sensitive and highly personal nature of adult motion pictures).

This factors weighs heavily in favor of M.D. proceeding with a pseudonym. M.D. is not the only victim of both Verizon and Glauner's actions. M.D.'s Complaint, with the attached exhibits of the Criminal Complaint and Indictment, make clear that her friends, family, and coworkers were also victims of these actions. For example, M.D.'s mother (who is identified as "Victim 2" in the Criminal Complaint ECF Doc 1-1 ¶ 28) received no less than ten harassing voicemails and numerous texts from Glauner, and a visit to her home for a purported welfare

check on M.D. See also Exhibit 2 at 11 ("My mom is afraid to answer her door. She doesn't know who's ringing the doorbell when before there was no fear and now there is."). Her coworkers were subjected to insults and curse words by Glauner. Her friends received disgusting and sexually threatening messages of what Glauner would do to M.D. Plaintiff M.D. has a minor daughter who was also present for such threats. These victims would all be publicly identifiable without M.D.'s pseudonym.

When Verizon released M.D.'s information, it also released the phone numbers of M.D.'s friends, family, and coworkers, and information regarding the frequency with which they contacted each other. The privacy of these victims, as well as M.D.'s would be violated once again should M.D. have to proceed with her full name in her attempts to seek justice.

There is also evidence that M.D. may herself be the subject of retaliatory emotional harm. As a result of Verizon and Glauner's conduct, her friends and family grew understandably frustrated with the chaos that was consuming their lives. A friend of M.D.'s stated "It's getting old…I shouldn't be getting these period." Exhibit 2 at 13. M.D. further stated that she felt her mother was blaming her for the chaos. *Id.*

Finally, it cannot be understated that M.D. has alleged severe and disabling emotional distress as a result of Verizon and Glauner's actions – fear for her life, for the safety of her family and friends, and fear of her life and reprisal from Glauner. M.D. has actively sought therapy since February 2023 for her post-traumatic stress and severe emotional distress as a result of Verizon and Glauner's conduct. It does not seek the ends of justice to have M.D. once again relinquish control over her privacy.

3. **There is no prejudice or unfairness to the opposing party by requesting that Plaintiff proceed by pseudonym.**

The Fourth Circuit has stated two sources of "potential unfairness when a plaintiff seeks to proceed anonymously while making allegations against a known defendant." *Doe v. Sidar,* 93 F.4th at 249. First, "there is a concern that anonymity may serve as a shield behind which false or defamatory charges may be launched without shame or liability, thus creating a risk a blameless defendant will suffer embarrassment and reputational damage merely by being sued." *Id.* Second, there is "the one-sidedness of allowing a plaintiff to 'have their cake and eat it too'" by being able to stay anonymous if they lose and have the power to reveal the identity if they win. *Id.* Nonetheless, such risks "evaporate" once liability is established. *Id.*

As a preliminary matter, M.D. has provided sufficient information to both Verizon and Glauner of who M.D. is and are able to defend the present civil action. Verizon knows who M.D. is by government name: it has produced records of the phone services contract between M.D. and Verizon, and seemingly does not contest the fact that the release of her information did in fact occur. Meanwhile, the civil complaint directly ties Glauner's criminal actions against M.D. to the present civil ones. See e.g. *O.W. v. Cabell Cnty. Bd. Of Educ.,* 3:24-cv-0070, 2024 U.S. Dist. LEXIS 71011 *2 (S.D.W.V. Apr. 18, 2024) ("Proceeding anonymously is not unfair to Defendants…Defendants already know who O.W. and G.Y." are.)

As to the issues of liability, the Fourth Circuit has held that because a default judgment on liability renders a defendant deemed to have admitted the plaintiff's well-pleaded allegations of fact and barred from contesting the truth of the allegations, there would be no prejudice to the private defendant named in the anonymous plaintiff's complaint as the perpetrator. Similarly, where a defendant is adjudicated or pleads guilty in a criminal matter, "collateral estoppel may apply to issues litigated in a criminal case which a party seeks to relitigate in a subsequent civil

proceeding." *United States v. Wight,* 839 F.2d 193, 196 (4th Cir. 1987). A criminal conviction utilized for estoppel may be a plea agreement. *Id.*

As to the individual defendants, there does not exist a great risk of unfairness as to either Verizon or Glauner should this court grant Plaintiff's motion to proceed under a pseudonym because the underlying facts of this case are largely not in dispute.

First, while a default judgment has not been entered as to Defendant Glauner, twenty-three days have now passed since Glauner was served with the Complaint. It is now past time for Glauner to respond to the Complaint. He has not yet filed an Answer contesting the allegations in the Complaint nor requested further time to respond.

Moreover, Defendant Glauner is presently awaiting arraignment in his criminal case for charges related to the fraud, stalking, and intent to kill, injure, and harass M.D. on January 14, 2025. As stated by the most recent filing, there appears to be a forthcoming resolution of the criminal matter, whose allegations largely pattern those in the present civil complaint. Under collateral estoppel principles, "a defendant is precluded from retrying issues necessary to his plea agreement in a later civil suit." *United States v. Wight,* 839 F.2d 193, 196 (4th Cir. 1987).

Nor is there risk of great unfairness to Verizon. While Verizon has not yet filed an Answer, they have filed a Motion to Compel Arbitration. In its fact section, Verizon states that "Rober Glauner Stalked M.D. and Defrauded Verizon." ECF Doc. 16 at 5. Specifically, Verizon, utilizing the Criminal Complaint drafted by FBI Agent Mike Neeley (ECF Doc 1-1), states that "On October 5, 2023, Verizon provided the person whom they believed was Detective Cooper with M.D.'s phone records, which allegedly included M.D.'s full name, address and new phone number. **Shortly after that, Verizon discovered that it had provided M.D.'s information in response to an invalid search warrant and contacted M.D. to inform her of the release of**

**her wireless records**." *Id.* at 6. (emphasis added). In short, Verizon does not dispute the central facts here: that M.D.'s information was released by them, to Glauner, invalidly.

Accordingly, while conclusive liability has not yet been established by Plaintiff, the underlying events of M.D.'s claims are seemingly not in dispute. Therefore, the risk of prejudice or unfairness to Verizon or Glauner are outweighed by the sensitive matters at issue here and the risk to innocent third parties.

**4. The other *James* factors are inapplicable here.**

As M.D. is not a minor, and neither Glauner nor Verizon are governmental parties, the other *James* factors are inapplicable.

### III. CONCLUSION

WHEREFORE, Plaintiff M.D. respectfully requests that this Court allow her to proceed by pseudonym, and that the Court issue any other relief as may be just and proper.

Respectfully submitted this the 11th day of December, 2024.

        */s/ Amanda C. Dure*
        Amanda C. Dure
        N.C. Bar No. 48710
        PANGIA LAW GROUP
        1717 N Street NW, Suite 400
        Washington, DC 20036

        */s/ James T. Crouse*
        James T. Crouse, Esq.
        N.C. Bar No. 22643
        CROUSE LAW OFFICES
        PO Box 33460
        Raleigh, North Carolina 27636
        T: (919) 881-8441
        F: (919) 881-8435

        *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that this 11th day of December, 2024, I served the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF M.D.'S MOTION TO PROCEED BY PSEUDONYM on counsel of record via the ECF filing system:

Caitlin M. Poe, Esq.
WILLIAMS MULLEN
N.C. State Bar No. 44713
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
P: (919) 981-4000
F: (919) 981-4300
cpoe@williamsmullen.com

and

Robert Michael Glauner
United States Marshal's Number 92011510
Pitt County Detention Center
124 New Hope Road
Greenville, NC 27834

/s/ Amanda C. Dure

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.2

I certify that pursuant to Local Civil Rule 7.2, that the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF M.D.'S MOTION TO PROCEED BY PSEUDONYM with the applicable word limit of less than 8400 words, and is 4,545 words.

/s/ Amanda C. Dure