IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-474-BO-BM

| | | |
|---|---|---|
| M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | O R D E R |
| | ) | |
| VERIZON COMMUNICATIONS INC., | ) | |
| VERIZON WIRELESS SERVICES, LLC, | ) | |
| and ROBERT MICHAEL GLAUNER, | ) | |
| | ) | |
| Defendants. | ) | |

This cause comes before the Court on Verizon Communications and Verizon Wireless Services' motion to sever claims and compel arbitration. Also pending are plaintiff's motion for Clerk to issue order directing the Pitt County Sheriff to serve defendant Glauner, plaintiff's motion for extension of time, the Verizon defendants' motion to strike, and plaintiff's motion to proceed using a pseudonym. The appropriate responses and replies have been filed, or the time for doing so has expired, and all motions are ripe for disposition.

## BACKGROUND

Plaintiff M.D., proceeding under a pseudonym, alleges that the Verizon defendants (hereinafter Verizon)[1] provided her stalker and sexual harasser Robert Glauner with her personal information at the demand of his fraudulent search warrant. *See* [DE 1] ¶ 1, 4, 7, 11, 13, 23, 28, 39-41, 43. Glauner used said information to establish contact with plaintiff, again sexually harass her, and later threaten her life, leading to his arrest in Raleigh, North Carolina on charges including stalking. [DE 1] ¶ 62, 63, 65, 71. Plaintiff subsequently sued Verizon for: (1) violation of the

---

[1] The Verizon defendants contend that they have been improperly named in the suit, and that Cellco Partnership is the proper party defendant.

federal Stored Communications Act, 19 U.S.C. § 2701, *et seq*; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; and (4) punitive damages. [DE 1] at 11-20. Plaintiff also included Glauner in her civil suit, making the same claims based on different allegations, as well as a claim of assault. [DE 1] at 12-20. All of plaintiff's claims allege sexual harassment. [DE 1] at 11-20.

Glauner has been prosecuted criminally in this district, pleaded guilty, and was sentenced to an aggregate term of imprisonment of sixty-five months. *See* [DE 37]; *United States v. Glauner*, No. 5:24-CR-25-FL (E.D.N.C.).

Verizon has moved to sever the claims against it from Glauner's and compel arbitration based on an arbitration clause found in Verizon's Customer Agreement, which plaintiff agreed to when she established cell service with Verizon in June of 2023. [DE 15]; [DE 16] at 1. Plaintiff opposes the motion based on the End Forced Arbitration of Sexual Assault and Sexual Harassment Claims Act (EFAA). [DE 26]; 9 U.S.C. §§ 401, 402. Verizon argues that the EFAA does not apply to the present case. [DE 16] at 25; [DE 34].

## DISCUSSION

Under the Federal Arbitration Act (FAA), Courts are required to separate arbitrable claims from nonarbitrable claims and send the former to arbitration. *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011). While the FAA establishes a "liberal federal policy favoring arbitration agreements," this mandate can be "overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (citations omitted).

The EFAA was enacted to allow sexual harassment claimants to pursue their claims in the courts rather than through arbitration and applies "[n]otwithstanding any other provision of [the FAA]." 9 U.S.C. § 402(a); *see also* H.R. Rep. No. 117-234, at 3-4 (2022). Under the EFAA, a

2

predispute arbitration agreement will be held invalid and unenforceable as applied to a person "alleging conduct constituting a sexual harassment dispute." § 402(a). Whether the EFAA applies to a particular arbitration agreement and dispute is an issue that courts resolve, "irrespective of whether the agreement purports to delegate such determinations to an arbitrator." *Id.* § 402(b). Moreover, the EFAA invalidates an arbitration agreement "to the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that ... relate to a sexual harassment dispute." *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 559 (S.D.N.Y. 2023); *Bray v. Rhythm Mgmt. Grp., LLC*, Civil Action No. TDC-23-3142, 2024 U.S. Dist. LEXIS 173020, at *22 (D. Md. Sep. 24, 2024) ("the language of the EFAA establishes that Congress intended to bar enforcement of an arbitration clause over all claims within a civil action when the case in some way 'relates to' a sexual harassment dispute.").

While the EFAA itself contains no explicit language defining the types of sexual harassment disputes it applies to, Congress' enactment was primarily intended to preclude arbitration in employment disputes. H.R. Rep. No. 117-234, at 11 ("a coalition of state attorneys general ... have written Congress in support of ending forced arbitration in *workplace* disputes involving claims of sexual harassment") (emphasis added); *see also* [DE 26-3]. As for its application to consumers, the EFAA's purpose was to cover situations where "a consumer who signs an arbitration clause ... is assaulted at a business." H.R. Rep. No. 117-234, at 3. For example, the House cites cases where customers of Massage Envy were sexually assaulted by Massage Envy employees and a case where hundreds of Sterling Jewelers employees, who "were victims of 'groping and sexual coercion and sexual degradation and rape' in the workplace over a period of years," were nevertheless forced into arbitration. *Id.* at 8, 10. Further, Congress stated the need for the EFAA was to ameliorate concerns surrounding the "phenomenon [known] as a 'culture of

3

silence that protects perpetrators at the cost of their victims.' This opacity often prevents others from learning of widespread misconduct." *Id.* at 4, 5.

"Sexual harassment dispute" is defined broadly and requires "only that the claim 'relates to' conduct that, as alleged, 'constitutes' sexual harassment under applicable law." *Delo v. Paul Taylor Dance Foundation, Inc.*, 685 F. Supp. 3d 173, 181 (S.D.N.Y. 2023); § 401(4). Further, a plaintiff need not label their claims as "sexual harassment" to fall within the scope of the EFAA. *Delo*, 685 F. Supp. 3d at 181. Instead, when evaluating a complaint, courts focus on the factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and "labels and conclusions ... will not do.")). Specifically, courts must examine whether a person claiming arbitration preclusion under the EFAA has "plausibly alleged" a sexual harassment dispute. *Mangum v. Ross Dress for Less Inc.*, 2025 WL 1088366, *5 (E.D.N.C. April 7, 2025).

Under North Carolina law there is no cause of action strictly titled "sexual harassment," rather, such claims are typically "raised as tort claims for intentional or negligent infliction of emotional distress." *Brady v. Prince*, 13-cvs-5996, 2015 NCBC 2, 7 n. 51 (Sup. Ct. Wake Cty. Jan 7, 2015). The elements of intentional infliction of emotional distress in North Carolina are "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82 (1992). Claims of intentional infliction of emotional distress "based upon allegations of sexual harassment generally have included one or more of the following ... explicitly obscene or "X rated" language; sexual advances towards plaintiff; statements expressing desire to engage in sexual relations with plaintiff..." *Guthrie v. Conroy*, 152 N.C. App. 15, 23 (2002) (collecting cases).

4

Here, plaintiff's claim of intentional infliction of emotional distress against Glauner include allegations of obscene language, sexual advances towards plaintiff, and statements expressing a desire to engage in sexual relations with plaintiff. [DE 1] ¶ 62 (containing Glauner's threats to "tie her up and rape her" among other allegations). Thus, plaintiff has plausibly pled a claim of intentional infliction of emotional distress under North Carolina law, alleging conduct that constitutes sexual harassment. Therefore, the instant case relates to a sexual harassment dispute. However, based on Congressional intent, the EFAA should not apply to this case, in which there is no allegation of sexual harassment by an employee of the company that sold services to the consumer. Moreover, the concerns underlying the EFAA, namely the obscuring of sexual harassment misconduct by companies, does not apply to this present case, as again plaintiff makes no allegation of sexual harassment by Verizon or Verizon employees and Glauner had no legal relationship to Verizon. Rather, plaintiff alleges Verizon enabled Glauner's sexual harassment by giving him access to plaintiff's personal information – a wrong indeed, but not one which was intended to fall within the scope of the EFAA.

Because the EFAA does not prevent the arbitration of plaintiff's claims against Verizon, the Court must consider whether Verizon has established arbitration must be compelled because "(1) a dispute exists between the parties; (2) the dispute falls within the scope of a written, valid agreement that includes an arbitration provision; (3) the parties' agreement relates to interstate or foreign commerce; and (4) the opposing party has failed or refused to arbitrate the dispute at hand." *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 595 (4th Cir. 2023).

Plaintiff and Verizon have a dispute which plaintiff has refused to arbitrate, as is evidenced by both this case and plaintiff's opposition to the motion to compel arbitration. Verizon has established that the customer agreement signed by plaintiff in June 2023 contains an arbitration

5

clause which requires arbitration of "any dispute that in any way relates to or arises out of" the customer agreement. [DE 17] Friedman Decl. ¶ 7; [DE 17-1] at 4. Plaintiff further agreed to a July 2023 amendment which again included an arbitration provision. *See* Friedman Decl. ¶ 9; [DE 17-3] at 26. Moreover, pursuant to the arbitration agreements, any dispute about whether plaintiff's claims against Verizon are arbitrable is to be decided by the arbitrator. *See* [DE 17-4] at 7. The customer agreement that plaintiff entered into has a nexus to interstate commerce as it involves wireless telephone services.

Plaintiff concedes that, if the Court determines that the EFAA does not apply, her customer agreement with Verizon contains a provision reserving for the arbitrator questions about the agreement to arbitrate and the scope of the arbitration agreement. [DE 26] at 29. Other than her arguments about the EFAA, plaintiff does not meaningfully contest the motion to compel arbitration.

Accordingly, the Court concludes that, for the foregoing reasons, Verizon has demonstrated that arbitration of plaintiff's claims against it is required. The Court will grant the request to sever plaintiff's claims against Verizon from her claims against Glauner and send those claims to arbitration.

## CONCLUSION

For the foregoing reasons, Verizon's motion to sever and compel arbitration [DE 15] is GRANTED. This action is hereby STAYED as against the Verizon defendants. Plaintiff has withdrawn [DE 15] her motion for Clerk of Court to issue order directing service [DE 19] and motion for extension of time [DE 20], and the clerk is DIRECTED to terminate those motions as pending.

6

Case 5:24-cv-00474-BO-BM    Document 38    Filed 09/23/25    Page 6 of 7

For those reasons stated in the memorandum in support thereof, plaintiff's motion to proceed by pseudonym [DE 29] is GRANTED. Verizon's motion to strike [DE 27] is DENIED.

SO ORDERED, this 22 day of September 2025.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE