IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-474-BO-BM

| | | |
|---|---|---|
| M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | <u>O R D E R</u> |
| | ) | |
| VERIZON COMMUNICATIONS INC., | ) | |
| VERIZON WIRELESS SERVICES, LLC, | ) | |
| and ROBERT MICHAEL GLAUNER, | ) | |
| | ) | |
| Defendants. | ) | |

This action arises out of the release of Plaintiff M.D.'s sensitive and personal information by her wireless phone carrier, Verizon, to her stalker, Defendant Glauner. Following the release of her information to Glauner, Plaintiff experienced months of sexual harassment, verbal abuse, and threats to her safety and life, until Glauner was apprehended on November 6, 2023, with a knife and rope in his vehicle in front of Plaintiff's home. Glauner was criminally indicted in the U.S. District Court for the Eastern District of North Carolina on January 19, 2024, on eight counts of violation of federal law, including feloniously traveling with the intent to kill, injure, and harass Plaintiff. See ECF Doc. 19, 5:24-cr-25-FL, *United States v. Glauner*, E.D.N.C. On April 10, 2025, Defendant Glauner pled guilty to eight charges, including stalking and transmitting a threat in interstate commerce, and is currently incarcerated in California. See ECF Docs. 55 and 63, 5:24-cr-25, *United States v. Glauner*, E.D.N.C. He is currently incarcerated at FCI Lompoc I and scheduled for release on November 6, 2027. *See* https://www.bop.gov/inmateloc/ (last visited November 3, 2026).

Plaintiff has moved for entry of default judgment against Glauner. For the following reasons, the Court concludes that default judgment is proper as Plaintiff has supported her well-pleaded allegations in the operative complaint with sufficient evidence of Glauner's behavior and actions and the subsequent damages suffered by Plaintiff. After considering the evidence and legal arguments presented to the Court, the Court will award $8,632,000 for Plaintiff's pain and suffering and emotional distress, and $10,000,000.00 in punitive damages to Plaintiff.

## I. BACKGROUND

This action was filed on August 19, 2024, against Verizon Communications, Inc., Verizon Wireless Services, LLC (hereinafter "Verizon" or "Verizon Defendants") and Robert Michael Glauner alleging violation of the Stored Communications Act; negligent infliction of emotional distress; intentional/reckless infliction of emotional distress; assault; and punitive damages all arising from the release of Plaintiff's confidential information by Verizon to Glauner. On November 8, 2024, the Verizon Defendants filed a Motion to Compel Arbitration. After briefing on the matter, on September 22, 2025, this Court granted the Verizon Defendants' Motion and stayed the action against the Verizon Defendants, severing the claims against Defendant Glauner. The Court issued a Notice on September 23, 2025, directing the Plaintiff to proceed under Rule 55(a) of the Federal Rules of Civil Procedure to obtain an entry of default against Defendant Glauner, who had not filed a responsive pleading in the appropriate time period. Plaintiff filed a Motion for Entry of Default on October 14, 2025. Clerk's Default was entered against Defendant Glauner on December 16, 2025. The Court issued a Notice Directing Plaintiff to Proceed After Entry of Default on January 26, 2026. Plaintiff filed a Motion for Default Judgment, along with a memorandum in support, on April 13, 2026, which detailed Plaintiffs damages and requested $8,632,000 for Plaintiffs pain and suffering and emotional distress, and $10,000,000.00 in punitive

damages. Despite having been served with the Motion for Default Judgment, Defendant Glauner has not responded to the motion. In this posture, the motion is ripe for disposition.

A. Plaintiff's Damages

The Court finds the following facts based on the evidence presented by Plaintiff in her Motion for Default Judgment and reasonable inferences therefrom. During her victim impact statement in the criminal case, Plaintiff explained, in part:

> In October of 2023, my stalker, Robert Glauner, fraudulently obtained all of my personal information from my phone company, Verizon. I have not known a moment of peace since then. I still cannot believe that this happened ... My life is so different since this happened. I used to be an extrovert, and I loved being social. And now all I want to do is stay home. I know I should not live in fear forever, but because of everything that happened, I do. Even when at home, I'm constantly on edge. My mind is in a constant loop of "what if he's outside?" The threat of him being around infects everything ... My heart races to a panic, and I have to talk myself down, repeating to myself that he can't get out of jail. Until he does. The fear that he will one day get out of jail and come find me is all-consuming. I think about the lengths he went through to find me the first time, sending a fake warrant to Verizon, harassing all my friends and family and coworkers, and driving across the country threatening me with rape and death, to show up on my doorstep. I truly fear that when he is released, I will be his target once again. Unfortunately, I don't have any faith that him getting caught will change him, his obsessive ways. I know he has sexually harassed and stalked girls before, but I'm the one who put him in jail, and he will want revenge on me.... I have been through a lot in my life, and I never had to seek therapy before. Even with therapy, I struggle every single day with being okay... the harassment at work affected my job. My boss was not happy about these vile calls to the store from the stalker. I was told to push through it and that if I didn't, I would be put on leave. By April of 2024, my physical health matched my mental health, and I could no longer physically work at the store....the anxiety and PTSD are so severe that it's hard to function.... I want to wake up from this nightmare, from this world where someone would threaten to kill me, to take me away from my family and my friends, because if he "could not have me, no one else could."

M.D.'s Victim Impact Statement, ECF Doc. 63 at 42:9-46:3, Case 5:24-cr-25, *United States v. Glauner*; Dkt. No. 47-1.

The counseling records from Plaintiffs Expert Roger Moore, PhD reflect that Plaintiff underwent consistent counseling as a result of Glauner's actions, first with Andrew McCullagh, LCSW from approximately February 7, 2024 through July 2025 when she could no longer afford that therapy, followed by Vincent Wright LCSW, who she sees to the present day. Dkt. No. 47-2 at 2. Following a forensic psychological evaluation of Plaintiff and his completion of a report on April 1, 2026, Dr. Moore diagnosed Plaintiff with post-traumatic stress disorder (PTSD), as well as adjustment disorder with mixed anxiety and depression and somatoform disorder. *Id.*

Specifically, Dr. Moore noted that "[Plaintiff] experienced significant emotional distress during the time of the stalking and has continued to suffer in the aftermath. It appears that her reactions to the trauma have notably undermined her social functioning, reduced her adaptive functioning, and apparently have negatively impacted her physical functioning with a potential onset of psychogenic seizures." *Id.* at 11. He further opined that

> Because of the nature of the traumatic experience – stalking across a range of settings – there were no particular associated 'danger cues but rather the danger was omnipresent ... she never knew when she was under observation or being tracked, and thus there was an ongoing sense of danger and no real setting for safety. Her feelings of vulnerability have not abated with the arrest, conviction, and incarceration of the perpetrator as she recognizes that he will be released from prison within the next couple of years and may be highly motivated to pursue and harm her upon his release. Such fears do not appear unfounded. The perpetrator has shown little regard for the legal system (having been a fugitive for 13 years), demonstrated high creativity and boldness in his efforts to track her, displayed an intensity of focus that led him to pursue her relentlessly, and exhibited a high threat that he would actually engage in violence as reflected by his cross-country trip to target her at her mother's house with the means and expressed intent of hurting her.

*Id.* at 10.

In weighing the statement of Plaintiff and the report of Dr. Moore, the court is persuaded that Plaintiff has suffered tremendous damages due to the actions of Glauner. Plaintiff will suffer

for the rest of her life by the memories, fears and intrusive thoughts of Defendant Glauner's felonious and deliberate actions.

## II. DEFAULT JUDGMENT

"Obtaining a default judgment is a two-step process. A plaintiff must first secure an entry of default under Rule 55(a) . . . [and] must then obtain a default judgment under Rule 55(b)[.]" *Perry v. Citimortgage, Inc.*, Case No. 1:24-cv-1080, 2026 U.S. Dist. LEXIS 32521, *7 (M.D.N.C. Feb. 18, 2026) (citing *Fidrych v. Marriot, Int'l, Inc.*, 952 F.3d 124, 130 (4th Cir. 2020)). This Court is required to "determine 'whether the well-pleaded allegations in the operative complaint support the relief sought.'" *Id.* (citation omitted). Only if the amount sought "is for a sum certain or a sum that can be made certain by computation" may the clerk enter default judgment. Fed. R. Civ. P. 55(b).

Where a defendant is adjudicated or pleads guilty in a criminal matter, "collateral estoppel may apply to issues litigated in a criminal case which a party seeks to relitigate in a subsequent civil proceeding." *United States v. Wight*, 839 F.2d 193, 196 (4th Cir. 1987). A criminal conviction utilized for estoppel may be a plea agreement, and "a defendant is precluded from retrying issues necessary to his plea agreement in a later civil suit." *Id.* It is undisputed that Glauner pled guilty to criminal counts 1-8, which included elements of fraud and false statements to Verizon Wireless; submitting a fraudulent search warrant for Plaintiff's confidential phone records while falsely claiming to be a detective with the Cary Police Department; transmitting text messages with threats to kill and injure Plaintiff; travelling in interstate with the intent to kill, injure, and harass Plaintiff; and then placing Plaintiff in reasonable fear of death and serious bodily injury and causing her "substantial emotional distress." *See* Dkt. No. 47-3; ECF Doc. 19, 5:24-cr-25, *United States v.*

*Glauner*, E.D.N.C. *See also* Dkt. No. 47-4; ECF Doc. 52, USA Sentencing Memorandum, 5:24-cr-25, *United States v. Glauner*, E.D.N.C.

First, Glauner intentionally accessed without authorization a facility through which an electronic communication service is provided - Verizon. This satisfies the essential elements of Plaintiff's cause of action as to Glauner's violation of the Stored Communications Act. Next, North Carolina law applies to Plaintiff's common law claims. To succeed on a claim of intentional infliction of emotional distress, a plaintiff must show that the defendant engaged in extreme and outrageous conduct, which was both intended to and did in fact cause severe emotional distress. *Waddle v. Sparks*, 331 N.C. 73, 82 (1992). Glauner's conduct, as described in his presentencing report, was "extreme and deplorable," ECF Doc. 52 p. 9, USA Sentencing Memorandum, 5:24-cr-25, with convictions demonstrating his intent to cause Plaintiff severe emotional distress, and her medical records proving that she did in fact suffer from substantial emotional distress. Similarly, negligent infliction of emotional distress has a lower bar, requiring that a defendant negligently engage in conduct that was reasonably foreseeable to cause the plaintiff severe emotional distress and did cause the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304 (1990). To prevail on an actionable claim for civil assault, the plaintiff must show an overt act or attempt to do some immediate physical injury to another person which causes reasonable apprehension of immediate bodily harm – this occurred when Glauner repeatedly threatened to kill Plaintiff. *Dickens v Puryear*, 302 N.C. 437, 445 (1981). Finally, punitive damages require clear and convincing evidence of fraud, malice, or willful or wanton conduct, and that the conduct is related to the plaintiff's injury. *See* N.C. Gen. Stat. § 1D-15(a)-(b). The Court finds that the essential elements of each of Plaintiff's causes of action are met by Glauner's actions.

Finally, Defendant Glauner is not a minor and there is no suggestion in the record that he is an incompetent person. Although Plaintiff has not filed an affidavit with the Court establishing whether Defendant Glauner is in military service, *see* 50 U.S.C. § 3931(b), in light of Defendant Glauner's incarcerated status pursuant to a judgment of this Court, the Court waives this requirement. Accordingly, the Court concludes that default judgment is proper against Glauner.

## III. DAMAGES

"A party seeking damages is required to prove damages by preponderance of evidence following entry of default before entry of default judgment." *Prescott v. Morgreen Solar Sols., LLC*, No. 5:17-CV-365-FL, 2019 U.S. Dist. LEXIS 53535, at *14 (E.D.N.C. Mar. 29, 2019) (citing *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 252 (4th Cir. 1967)). When "the defaulting party 'contests the damages at issue, a full hearing may be required on the issue of damages, since a default does not concede the amount demanded.'" *Prescott*, 2019 U.S. Dist. LEXIS at *14 (citation omitted). A plaintiff's testimony may stand alone to support an award of compensatory damages for emotional distress; however, a plaintiff must establish that she "suffered demonstrable emotional distress, which must be sufficiently articulated[.]" *Price v. City of Charlotte*, 93 F.3d 1241, 1251-52; 1254 (4th Cir. 1996). This requires that the testimony not resort to mere conclusory statements, and the testimony must '"show a causal connection between the violation and her emotional distress.'" *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 547 (4th Cir. 2003); *see also EEOC v. Carter Behavior Health Servs.*, No. 4:09-CV-122-F, 2011 U.S. Dist. LEXIS 129493 at * 19 (E.D.N.C. Oct. 7, 2011). In determining an award for emotional distress, courts have considered the following factors: "(1) the loss of self esteem from peers, (2) physical injury resulting in emotional distress, (3) psychological counseling or treatment, (4) loss of income or other pecuniary expense, (5) the degree of emotional distress, (6)

the context of events surrounding it, (7) evidence tending to corroborate plaintiff's testimony, (8) the connection between the conduct at issue and the distress, (9) medical treatment rendered due to the distress and (10) mitigating factors." *EEOC v. Carter Behavior Health Servs.*, 2011 U.S. Dist. LEXIS 129493, at *20.

In this case, Plaintiff has presented evidence of tremendous damages due to the actions of Glauner. These damages include psychological counseling, lost wages, and intense emotional and physical distress, for which Plaintiff is continuing treatment. North Carolina law permits a per diem argument on damages where a factual basis exists for it. *See Weeks v. Holsclaw*, 306 N.C. 655,661 (1982). The uncontested record before the Court shows that Plaintiff suffers from PTSD, paralyzing anxiety, and a deep, credible fear that once Glauner is released he will come after Plaintiff again. Plaintiff's stalking expert, Dr. Patrick Brady, outlined in his report that stalking has lifelong consequences for victims, impacting the physical and psychological health and social and financial wellbeing of the victims. Dkt. No. 47-5. Plaintiff presented to this Court damages to Plaintiff that began October 10, 2023, following Verizon's release of the records, continued 916 days to the date of filing of the motion for default judgment, and that, more likely than not, will continue for the rest of Glauner's lifetime. Pursuant to N.C. Gen. Stat. § 8-46, this court is permitted to consider as evidence mortality tables. Glauner is now 61 years old, with a life expectancy of a further 20.4 years, or 7,446 days. Dkt. No. 47-1 at 36:16. In total, Plaintiff presented damages reflecting that Plaintiff will have suffered for a total of 8,362 days, or 22.9 years.

Based on this evidence presented, Plaintiff has requested Default Judgment against Defendant Glauner in the compensatory amount of $8,632,000, or a per diem of $1,000 of pain and suffering and emotional distress. The Court finds the evidence persuasive and well founded as

to the compensatory amount requested. Additionally, Glauner's conduct was extensive and horrific: committing fraud, traveling across the country, harassing Plaintiff's friends, family, and work, and threatening to kill and rape Plaintiff. The Court finds that, given Glauner's unconscionable behavior, $10,000,000 is an appropriate amount of damages for punitive damages to Plaintiff.

## IV. CONCLUSION

For the following reasons, the Court concludes that Plaintiff, having good cause shown for default judgment against Defendant Robert Michael Glauner, is entitled to default judgment. Plaintiff's motion for default judgment, Dkt. No. 46, is GRANTED. The Court enters default judgment against Defendant Robert Michael Glauner and awards to Plaintiff $8,632,000 for Plaintiff's pain and suffering and emotional distress, and $10,000,000.00 in punitive damages.

Plaintiff's motion to seal her memorandum in support and exhibits to her motion for entry of default judgment, Dkt. No. 48, is GRANTED for the reasons discussed in Dkt. No. 49.

This action remains STAYED as against the Verizon Defendants.

SO ORDERED, this 10 day of November 2026.

Terrence Boyle

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE